1
2
3           UNITED STATES DISTRICT COURT
4                DISTRICT OF NEVADA
5                      * * *
6   ALDO MARONES,                          Case No. 3:18-cv-00447-MMD-WGC
7                           Petitioner,              ORDER
8       v.
9   STATE OF NEVADA, *et al.*,
10                        Respondents.
11
12  **I.    SUMMARY**

13          Petitioner Aldo Marones filed a petition for writ of habeas corpus under 28 U.S.C.

14  § 2254. This matter is before the Court for adjudication of the merits of Marones' amended

15  petition ("Amended Petition"). For the reasons discussed below, the Court denies the

16  Amended Petition and a certificate of appealability.

17  **II.   BACKGROUND**

18          Marones' convictions are the result of events that occurred in Clark County,

19  Nevada on or between November 12, 2013, and November 13, 2013. (ECF No. 11-3.)

20  A 7-Eleven cashier testified that at approximately 11:00 p.m. on November 12, 2013, he

21  noticed an individual, later identified as Marones, outside the store "gazing at [him]"

22  suspiciously while wearing gloves. (ECF No. 13-1 at 76–77, 79–82.) Marones "popp[ed]

23  his head into the store," questioned the cashier about why he was looking at him, and

24  then threatened the cashier to "not look at [him]." (*Id.* at 84.) Marones entered the store

25  a second time, again telling the cashier not to look at him. (*Id.* at 85.) While the cashier

26  was on the telephone with a 9-1-1 operator, Marones entered the store a third time and

27  told the cashier to put the telephone down. (*Id.* at 87.) Marones then went behind the

28  ///

cashier's counter and showed the cashier a gun he was holding. (*Id.* at 88–89.) The cashier told Marones to leave, and Marones "took some cigarette boxes" without paying and left. (*Id.* at 92.)

Following a jury trial, Marones was found guilty of burglary while in possession of a firearm, carrying a concealed firearm or other deadly weapon, and robbery with the use of a deadly weapon. (ECF No. 14-4.) Marones was sentenced to 4 to 10 years for the burglary conviction, 12 to 36 months for the concealed firearm conviction, and 4 to 10 years for the robbery conviction plus a consecutive term of 4 to 10 years for the deadly weapon enhancement. (ECF No. 14-7.) Marones appealed, and the Nevada Court of Appeals affirmed on September 15, 2015. (ECF No. 17-5.) Remittitur issued on October 27, 2015. (ECF No. 17-6.)

Marones filed three state habeas corpus petitions on February 11, 2015, August 13, 2015, and August 25, 2016, respectively. (ECF Nos. 17-7, 17-8, 18-6.) The state district court denied Marones' petition on February 8, 2017. (ECF No. 18-10.) Marones appealed, and the Nevada Court of Appeals affirmed on November 16, 2017. (ECF No. 18-15.) Remittitur issued on December 14, 2017. (ECF No. 18-16.)

Marones filed a federal habeas corpus petition on September 17, 2018. (ECF No. 1-1.) This Court ordered Marones to file an amended first page of the petition to name the correct Respondent. (ECF No. 5.) Marones complied on December 10, 2018. (*See* ECF No. 6.) This Court ordered the Clerk of the Court to file the original petition (ECF No. 1-1) and the amended first page of the petition (ECF No. 6) together in one document and to have this new document reflected in the docket as Marones' Amended Petition. (ECF No. 7.)

The Amended Petition has a filing date of December 12, 2018 and alleges two violations of Marones' federal constitutional rights: his trial counsel failed to consult with him about his appellate rights and failed to file an appeal on his behalf.  (ECF No. 8.) Respondents answered Marones' Amended Petition on January 25, 2019. (ECF No. 10.) Marones replied on March 1, 2019. (ECF No. 19.)

### III.   LEGAL STANDARD

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

1  disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562

2  U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The

3  Supreme Court has stated "that even a strong case for relief does not mean the state

4  court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at

5  75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as

6  a "difficult to meet" and "highly deferential standard for evaluating state-court rulings,

7  which demands that state-court decisions be given the benefit of the doubt" (internal

8  quotation marks and citations omitted)).

9  **IV.   DISCUSSION**

10       Marones' two grounds for relief involve claims that his trial counsel was

11  ineffective. (*See* ECF No. 8 at 6–8.) In *Strickland*, the Supreme Court propounded a

12  two-prong test for analysis of claims of ineffective assistance of counsel requiring the

13  petitioner to demonstrate (1) that the attorney's "representation fell below an objective

14  standard of reasonableness," and (2) that the attorney's deficient performance

15  prejudiced the defendant such that "there is a reasonable probability that, but for

16  counsel's unprofessional errors, the result of the proceeding would have been different."

17  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of

18  ineffective assistance of counsel must apply a "strong presumption that counsel's

19  conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

20  The petitioner's burden is to show "that counsel made errors so serious that counsel

21  was not functioning as the 'counsel' guaranteed the defendant by the Sixth

22  Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not

23  enough for the habeas petitioner "to show that the errors had some conceivable effect

24  on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as

25  to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The

26  *Strickland* standard is also utilized to review appellate counsel's actions: a petitioner

27  must show "that [appellate] counsel unreasonably failed to discover nonfrivolous issues

28  and to file a merits brief raising them" and then "that, but for his [appellate] counsel's

1   unreasonable failure to file a merits brief, [petitioner] would have prevailed on his

2   appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

3   Where a state district court previously adjudicated the claim of ineffective

4   assistance of counsel under *Strickland*, establishing that the decision was unreasonable

5   is especially difficult. *See Harrington*, 562 U.S. at 104–05. In *Harrington*, the United

6   States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential,

7   and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v.*

8   *Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted)

9   ("When a federal court reviews a state court's *Strickland* determination under AEDPA,

10  both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's

11  description of the standard as doubly deferential.") The Supreme Court further clarified

12  that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were

13  reasonable. The question is whether there is any reasonable argument that counsel

14  satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

15  In Marones' appeal of the denial of his state habeas petition, the Nevada Court

16  of Appeals held:

17  
18  First, Marones claimed his counsel was ineffective for failing to file a notice
    of appeal and pursue a direct appeal. Marones cannot demonstrate he is
19  entitled to relief because he filed a pro se notice of appeal and his counsel
    represented him during the appellate proceedings. In addition, this court
    considered Marones' direct appeal and affirmed the judgment of conviction.
20  *Marones v. State*, Docket No. 67312 (Order of Affirmance, September 15,
21  2015). Therefore, we conclude the district court did not err in denying this
    claim.

22  Second, Marones claimed his counsel was ineffective for failing to file
23  appellate briefs or other documents in support of his direct appeal. Marones
    cannot demonstrate either deficiency or prejudice for his claim because his
24  counsel filed a fast track statement and an appendix in support of Marones'
    direct appeal. Therefore, we conclude the district court did not err in denying
25  this claim.

26  Third, Marones appeared to assert his counsel was ineffective for failing to
27  raise errors Marones believed occurred during the trial as claims on direct
    appeal. Marones also appeared to claim his counsel was ineffective for
28  failing to consult with him regarding the direct appeal. Marones failed to

1
2
3
4

demonstrate his counsel's performance was deficient or resulting prejudice. Marones did not identify any claims counsel should have raised on direct appeal and did not explain how consultation with his counsel would have benefitted him. Bare claims, such as these, are insufficient to demonstrate a petitioner is entitled to relief. *See Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984). Therefore, we conclude the district court did not err in denying this claim.

5    (ECF No. 18-15 at 3-4.)

6    The Nevada Court of Appeals' rejection of Marones' *Strickland* claims was neither

7    contrary to nor an unreasonable application of clearly established law as determined by

8    the United States Supreme Court. The Court will address the two ineffective-assistance-

9    of-counsel claims in turn below.

10    **A.  Ground 1**

11    In Ground 1, Marones alleges that his trial counsel failed to consult with him about

12    his appellate rights in violation of his Sixth Amendment rights even though his trial

13    counsel knew he wanted to appeal. (ECF No. 8 at 6.) In his reply, Marones appears to

14    argue that if his trial counsel had consulted with him, he would have instructed his trial

15    counsel to have included the following claims in his direct appeal: a sufficiency-of-the-

16    evidence claim and a claim that the state district court erred in denying his motion to

17    dismiss.[1] (ECF No. 19 at 3.)

18    During his sentencing hearing, the following colloquy took place between

19    Marones and the state district court:

20
21
22
23

[Marones]:          – would like to thank Your Honor and [trial counsel] and also the DA for your valuable time. And I would like to inform my attorney and the courts that I would like – I want a writ of habeas corpus filed on my behalf and the Court to appoint me with an appellate counsel for a direct appeal.

24    THE COURT:          You want to file an appeal?

25
26    [Marones]:          For a direct appeal.

27
28

[1]Marones also appears to argue that appellate counsel should have been appointed. (ECF No. 19 at 5.) This claim lacks merit as Marones' trial counsel was appointed as his appellate counsel during his sentencing hearing. (*See* ECF No. 14-6 at 10.)

| | | |
|---|---|---|
| THE COURT: | Okay. Then you want to file an – you want a direct appeal to the Nevada Supreme Court? |
| [Marones]: | Yes, ma'am. |
| THE COURT: | Okay. [Trial counsel], you'll make sure his notice of appeal gets filed? |
| [Trial counsel]: | I discussed that with him, Your Honor. Yes. |
| THE COURT: | Okay, thank you. |

(ECF No. 14-6 at 6.) Later, Marones' trial counsel and the state district court had the

following discussion:

| | | |
|---|---|---|
| [Trial counsel]: | And, Your Honor, as Mr. Marones indicated, he is requesting that I file an appeal on his behalf. |
| THE COURT: | Sure. |
| [Trial counsel]: | I would be appointed for the same and I will certainly do so – |
| THE COURT: | Absolutely. |
| [Trial counsel]: | – within 30 days of the filing of the JOC. |
| THE COURT: | Okay. |

(*Id.* at 10.)

On December 30, 2014, twelve days after his sentencing hearing, Marones'

judgment of conviction was filed. (ECF No. 14-7 at 2.) Marones filed a notice of appeal

on his own behalf on January 22, 2015. (ECF No. 14-8 at 2.) Marones' trial counsel—

now his appellate counsel—filed a fast track appellate statement and appendix on April

15, 2015. (ECF Nos. 15-1, 16-1, 17-1; ECF No. 17-2 at 2.) Marones' fast track statement

included two issues: (1) the admission of lay opinion testimony regarding the contents

of the admitted security video violated evidentiary standards, depriving Marones of his

rights to due process and an impartial jury, and (2) the state district court erred when it

denied Marones' motion for a mistrial after the State elicited prior bad act testimony.

///

7

1   (ECF No.17-2 at 6.) The State responded on May 5, 2015. (ECF No. 17-3.) The Nevada

2   Court of Appeals affirmed Marones' judgment of conviction. (ECF No. 17-5.)

3        The *Strickland* "test applies to claims . . . that counsel was constitutionally

4   ineffective for failing to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477

5   (2000). "[C]ounsel has a constitutionally imposed duty to consult with the defendant

6   about an appeal when there is reason to think either (1) that a rational defendant would

7   want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to

8   counsel that he was interested in appealing." *Id.* at 480. Consulting means "advising the

9   defendant about the advantages and disadvantages of taking an appeal, and making a

10  reasonable effort to discover the defendant's wishes." *Id.* at 478.

11        Here, Marones' interest in appealing his judgment of conviction was clear.

12  Indeed, Marones requested such an appeal before the state district court at his

13  sentencing hearing. (*See* ECF No. 14-6 at 6.) That being considered, as the Nevada

14  Court of Appeals reasonably concluded (*see* ECF No. 18-15 at 4), Marones fails to

15  demonstrate that his trial counsel was deficient for failing to consult with him about his

16  appellate rights. *Strickland*, 466 U.S. at 688. In fact, Marones' trial counsel indicated at

17  the sentencing hearing that he "discussed [Marones' notice of appeal] with him." (ECF

18  No. 14-6 at 6.) The fact that Marones' trial counsel consulted with him about his appellate

19  rights is confirmed by Marones' own statements at the sentencing hearing that he knew

20  he had a right to a direct appeal and wanted to assert that right. *See Flores-Ortega*, 528

21  U.S. at 478.

22        However, even if Marones' trial counsel was deficient, as the record is silent as

23  to what consultation actually took place, the Nevada Court of Appeals also reasonably

24  concluded that Marones failed to demonstrate prejudice. (*See* ECF No. 18-15 at 4.) In

25  order "to show prejudice [from a lack of consultation regarding a notice of appeal], a

26  defendant must demonstrate that there is a reasonable probability that, but for counsel's

27  deficient failure to consult with him about an appeal, he would have timely appealed."

28  ///

8

1  *Flores-Ortega*, 528 U.S. at 484. Marones cannot meet this burden, as he did timely file

2  a notice of appeal on his own behalf. (ECF No. 14-8 at 2.)

3      Because the Nevada Court of Appeals reasonably determined that Marones'

4  ineffective-assistance-of-counsel claim lacked merit, Marones is denied federal habeas

5  relief for Ground 1.

6      **B. Ground 2**

7      In Ground 2, Marones alleges that his trial counsel failed to file an appeal on his

8  behalf in violation of his Sixth Amendment rights even though Marones and the state

9  district court both instructed Marones' trial counsel to do so. (ECF No. 8 at 8.)

10     "The timely filing of a notice of appeal is jurisdictional and is an essential

11  prerequisite to the perfection of an appeal." *Scherer v. State*, 89 Nev. 372, 374, 513

12  P.2d 1232, 1233 (1973); *see also* Nev. R. App. Pro. 3(a) ("[A]n appeal permitted by law

13  from a district court may be taken only by filing a notice of appeal with the district court

14  clerk."). In a criminal case, this notice of appeal "shall be filed with the district court clerk

15  within 30 days after the entry of the judgment or order being appealed." Nev. R. App.

16  Pro. 4(b)(1)(A). For fast track criminal appeals, Nevada Rule of Appellate Procedure

17  3C(b)(2) provides that "[t]rial counsel shall file the notice of appeal, rough draft transcript

18  form, and fast track statement and consult with appellate counsel for the case regarding

19  the appellate issues that are raised."

20     Because Marones' judgment of conviction was filed on December 30, 2014 (*see*

21  ECF No. 14-7 at 2), Marones' notice of appeal was required to be filed by January 29,

22  2015. *See* Nev. R. App. Pro. 4(b)(1)(A). Marones filed a notice of appeal on his own

23  behalf on January 22, 2015 before the deadline (*see* ECF No. 14-8 at 2) so it is not clear

24  that Marones' trial counsel acted deficiently. *Strickland*, 466 U.S. at 688. Indeed,

25  Marones' trial counsel had seven more days to timely file the notice of appeal. The fact

26  that Marones beat his trial counsel to filing the document does not demonstrate that

27  Marones' trial counsel acted unreasonably. Accordingly, because the Nevada Court of

28  Appeals reasonably determined that Marones could not demonstrate that he was

1  entitled to relief based on his *Strickland* claim (ECF No. 18-15 at 3), Marones is denied

2  federal habeas relief for Ground 2.

3  **V.   CERTIFICATE OF APPEALABILITY**

4  This is a final order adverse to Marones. Rule 11 of the Rules Governing Section

5  2254 Cases requires this Court to issue or deny a certificate of appealability (COA).

6  Therefore, this Court has *sua sponte* evaluated the claims within the petition for suitability

7  for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851,

8  864–65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when

9  the petitioner "has made a substantial showing of the denial of a constitutional right." With

10  respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable

11  jurists would find the district court's assessment of the constitutional claims debatable or

12  wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S.

13  880, 893 & n.4 (1983)). Applying this standard, the Court finds that a certificate of

14  appealability is unwarranted.

15  **VI.   CONCLUSION**

16  It is therefore ordered that the Amended Petition for a Writ of Habeas Corpus

17  Pursuant to 28 U.S.C. § 2254 (ECF No. 8) is denied.

18  It is further ordered that Petitioner is denied a certificate of appealability.

19  The Clerk of the Court is directed to enter judgment accordingly and close this

20  case.

21  DATED THIS 17th day of June 2020.

22

23

24  _____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

25

26

27

28